## Case No. 3,491a.

### CURRIE et al. v. The JOSIAH HARTHORN.

[Betts' Scr. Bk. 710.]

District Court, S. D. New York. Oct. 30, 1862.

PARTIES — INHABITANTS OF STATES IN REBELLION — SUSPENSION OF SUIT.

[1. The proclamation of the president, issued under authority of congress, declaring the inhabitants of certain states in rebellion to be in a state of insurrection, and forbidding all commercial intercourse with them, is binding on the federal courts, and will prevent such inhabitants maintaining suits therein.]

[2. Where, in case of cross libels for collision, the owners of one of the vessels are citizens of a state which afterwards enters into rebellion, the court will suspend the case until after the government of the United States is re-established in such state.]

[In admiralty. Cross libels for collision between the schooner Josiah Harthorn, her tackle, etc., Lemuel Bradford and others, claimants, and the schooner Gallego, her tackle, etc., David Currie and others, claimants.]

HALL, District Judge. On the 23rd day of November, 1859, David Currie and others, describing themselves in the libel as "of Richmond, in the state of Virginia, owners of the schooner Gallego," filed their libel in the suit first above entitled for the purpose of recovering the damages sustained by the Gallego in a collision with the schooner Josiah Harthorn, on the evening of the 19th of November, 1859. On the 19th of the same month Lemuel Bradford and others, describing themselves as "of Bangor, in the state of Maine, and owners of the schooner called Josiah Harthorn," filed their cross libel to recover the damages sustained by the latter vessel in the same collision. The libellants in each suit are the claimants in the other respectively, and answers were filed in both suits. On these pleadings, and on the proofs taken in the cause the original and cross suits were brought to a hearing in the month of December, 1861. On that hearing it was insisted, upon the final argu-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

ment, that the libellants in the first or original suit ought not to be allowed to proceed therein, for the reason that they were then residents of the eastern part of Virginia, the inhabitants of which were in rebellion against the United States, and therefore were not entitled to sue in our courts. My attention was not then called to the act of congress of July 13, 1861, c. 3 (12 Stat. 255), as to the proclamation of the president issued in pursuance of that act (Id. Append. No. 9, p. 5), and the counsel for the respective parties were heard at length upon the merits.

Before the case was taken up for examination my attention had been called to the act of congress, and to the proclamation of the president, and the examination and the decision of the case were therefore postponed from time to time in the hope that the existing insurrection would be abandoned or suppressed, or that Richmond and its neighborhood would be "occupied and controlled by the forces of the United States engaged in dispersing the insurgents" and suppressing the insurrection. So much time has now elapsed that it may not be expedient to postpone for a longer period the decision of the preliminary question ensuing under said act of congress and proclamation, as one or the other of the parties may desire to know the cause of the delay in making a final decision. I propose therefore, to dispose of the preliminary question, and to leave the final decision of the case (as it was commenced before the Rebellion) to depend upon a future examination of the pleadings and proofs, if the action of the executive and legislative department of the government shall at any time hereafter be such as to render it proper to dispose of the case upon its merits. The proclamation appears to be authorized by the act of congress, and (after proper recitals) declares "that the inhabitants of the said states of Georgia, South Carolina, Virginia, North Carolina, Tennessee, Alabama, Louisiana, Texas, Arkansas, Mississippi and Florida (except the inhabitants of that part of the state of Virginia lying west of the Alleghany mountains, and of such other parts of that state, and the other states hereinbefore named, as may maintain a loyal adhesion to the Union and the constitution, or may be from time to time occupied and controlled by forces of the United States engaged in the dispersion of the said insurgents), are in a state of insurrection against the United States, and that all commercial intercourse between the same and the inhabitants thereof, with the exceptions aforesaid, and the citizens of other states and other parts of the United States, is unlawful and will remain unlawful until such insurrection shall cease or has been suppressed," &c.

When these states, by their regularly constituted state authorities and governments, assumed to withdraw from the Union and to become independent sovereign states; when in their assumed character of independent sovereign states they determined to cast off all allegiance to the constitution and government of the United States; when they denied the authority and disclaimed the protection of the constitution and waged war against the government, formed in accordance with its provisions, and thereby made it impossible for the executive and judicial departments of the United States to exercise their appropriate functions or discharge their constitutional duties in the insurgent states, the executive and legislative departments of our government (having authority to determine its political relations) had the right to decide whether the inhabitants of those states should be considered as public enemies, and consequently prohibited from suing in our courts until the authority of our government should be re-established in such state or parts of states. By the act of congress, and the proclamation to which I have referred, the agreements for the exchange of prisoners of war, and the actual and continual exchange of such prisoners by the blockade of the ports of the insurgent states, and by many other acts of congress and of the president, I understand that the inhabitants of the states and parts of states in rebellion, and not under the control of our troops or government, with the exception declared in the proclamation (have been and until the rebellion is suppressed or shall otherwise cease) are to be held to be public enemies of the United States; and such is the settled and declared policy of our government. As such public enemies they are not entitled to sue in our courts, and the question of their relations to the government being purely a political one, this judicial department must regard the decisions of that question made by the political departments of the government as conclusive. This case will, therefore, be suspended until the authority of the government of the United States is re-established at Richmond, or some change in the relations of the parties, or some action of our government, shall render it proper to decide the case upon the merits.